**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| APRIL HUPP | ) | CASE NO. |
| 493 Applegate Lane | ) | |
| Delaware, Ohio 43015, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| AMERICAN SIGNATURE, INC. | ) | |
| 6067 E Main Street | ) | **JURY DEMAND ENDORSED** |
| Columbus, Ohio 43213 | ) | **HEREIN** |
| | ) | |
| **Serve Also:** | ) | |
| American Signature, Inc. | ) | |
| c/o Tod H. Friedman | ) | |
| 4300 East Fifth Avenue | ) | |
| Columbus, Ohio 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, April Hupp, by and through undersigned counsel, as her Complaint against

Defendant American Signature, Inc. d/b/a Value City Furniture ("Value City"), states and avers

the following:

**PARTIES AND VENUE**

1. Hupp is a resident of the city of Delaware, Delaware County, Ohio.

2. At all times herein, Hupp was acting in the course and scope of her employment.

3. Value City is a domestic corporation that does business at 6067 E Main Street, Columbus,

   Ohio 43213 ("Main Street Location").

4. Value City is and, at all times herein, was an employer within the meaning of R.C. § 4112.01

   *et seq.*

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Hupp is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Family & Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

6. All material events alleged in this Complaint occurred in Franklin County, Ohio.

7. This Court has supplemental jurisdiction over Hupp's state law claims pursuant to 28 U.S.C. § 1367 as Hupp's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Within 300 days of the conduct alleged below, Hupp filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00939 against Value City ("Hupp EEOC Charge").

10. On or about August 19, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Hupp regarding the Charges of Discrimination brought by Hupp against Value City in the Hupp EEOC Charge.

11. Hupp received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit A.

12. Hupp has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Hupp has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

14. Hupp is a former employee of Value City.

15. In or about October 2013, Hupp began working for Value City.

16. Value City employed Hupp as a home furnishings consultant.

17. Hupp's job primarily consisted of inside sales.

18. Hupp worked at Value City's Main Street Location.

19. Value City was, at all times hereinafter mentioned, engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year and therefore is an employer as defined in 29 U.S.C § 2611(4).

20. At all times relevant herein, Hupp was employed by Value City for at least 12 months and had at least 1,250 hours of service with Value City and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

21. Hupp has depression.

22. Hupp's son has Huntington's disease.

23. In or about August 2019, Hupp learned about her son's Huntington's disease.

24. When Hupp learned about her son's Huntington's disease, the symptoms of her depression became significantly worse.

25. In or about August 2019, Hupp's depression significantly limited her ability to work.

26. Because of Hupp's depression, Hupp has a physical and/or mental impairment that significantly limits her in one or more life activities.

27. Because of Hupp's depression, Hupp has a record of physical and/or mental impairment.

28. Value City perceived Hupp as disabled.

29. Hupp is disabled within the meaning of ADA.

30. Hupp is disabled within the meaning of R.C. § 4112.01 *et seq.*

31. Hupp's depression is a serious medical condition within the meaning of FMLA.

32. Hupp's son's Huntington's disease is a disability within the meaning of ADA.

33. Hupp's son's Huntington's disease is a disability within the meaning of R.C. § 4112.01 *et seq.*

34. Hupp's son's Huntington's disease is a serious medical condition within the meaning of FMLA.

35. In or about August 2019, Hupp requested FMLA leave ("August FMLA Request").

36. Hupp submitted the August FMLA Request to Matrix Absence Management.

37. Matrix Absence Management was a third-party company that processed FMLA requests for Value City.

38. In or about August 2019, Hupp informed Ayanda Hickman about her depression.

39. Hickman was Hupp's supervisor.

40. In or about August 2019, Hupp informed Hickman about her son's Huntington's disease.

41. In or about August 2019, Value City granted the August FMLA Request.

42. In or about September 2019, Hupp returned from her FMLA leave.

43. Prior to September 2019, Value City gave sales leads to home furnishings consultants in a rotating fashion.

44. Hickman was in charge of assigning sales leads to home furnishings consultants at the Main Street Location.

45. In or about September 2019, Value City stopped assigning sales leads to Hupp ("Stopping of Sales Leads").

46. In or about September 2019, Value City gave Hupp no sales leads.

47. In or about September 2019, Value City gave sales leads to Hupp's similarly-situated coworkers.

48. In or about October 2019, Value City gave Hupp no sales leads.

49. In or about October 2019, Value City gave sales leads to Hupp's similarly-situated coworkers.

50. In or about November 2019, Value City gave Hupp no sales leads.

51. In or about November 2019, Value City gave sales leads to Hupp's similarly-situated coworkers.

52. Value City paid Hupp by commission.

53. Because of the Stopping of Sales Leads, Hupp made less money on commissions than she made before the Stopping of Sales Leads.

54. The Stopping of Sales Leads was an adverse employment action.

55. The Stopping of Sales Leads was an adverse action.

56. Value City knowingly did the Stopping of Sales Leads.

57. Value City intentionally did the Stopping of Sales Leads.

58. Value City willfully did the Stopping of Sales Leads.

59. Value City did the Stopping of Sales Leads because of Hupp's disability.

60. Value City did the Stopping of Sales Leads because of Hupp's perceived disability.

61. Value City did the Stopping of Sales Leads because of Hupp's association with her disabled son.

62. Value City did the Stopping of Sales Leads in retaliation for Hupp's use of FMLA leave.

63. In or about November 2019, Hupp submitted a request to Matrix Absence Management for short-term disability leave ("November Leave Request").

64. On or about November 22, 2019, Value City approved Hupp's November Leave Request.

65. In or about January 2020, Hupp requested to return to work.

66. Value City did not allow Hupp to return to work after her November Leave Request.

67. In or about January 2020, Value City terminated Hupp's employment.

68. In or about January 2020, Value City constructively discharged Hupp.

69. Value City knowingly skipped progressive disciplinary steps in terminating Hupp.

70. Value City knowingly terminated Hupp's employment.

71. Value City knowingly took an adverse employment action against Hupp.

72. Value City knowingly took an adverse action against Hupp.

73. Value City intentionally skipped progressive disciplinary steps in terminating Hupp.

74. Value City intentionally terminated Hupp's employment.

75. Value City intentionally took an adverse employment action against Hupp.

76. Value City intentionally took an adverse action against Hupp.

77. Value City knew that skipping progressive disciplinary steps in terminating Hupp would cause Hupp harm, including economic harm.

78. Value City knew that terminating Hupp would cause Hupp harm, including economic harm.

79. Value City willfully skipped progressive disciplinary steps in terminating Hupp.

80. Value City willfully terminated Hupp's employment.

81. Value City willfully took an adverse employment action against Hupp.

82. Value City willfully took an adverse action against Hupp.

83. As a direct and proximate result of Value City's conduct, Hupp suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

84. Hupp restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

85. Hupp has a physical and/or mental impairment that significantly limits her in one or more major life activities.

86. Hupp has a record of physical and/or mental impairment.

87. Value City perceived Hupp as disabled.

88. Hupp's son is disabled.

89. Value City treated Hupp differently than other similarly-situated employees based on her disabling condition.

90. Value City treated Hupp differently than other similarly-situated employees based on her perceived disabling condition.

91. Value City treated Hupp differently than other similarly-situated employees based on her association with her disabled son.

92. In or about January 2020, Value City terminated Hupp's employment.

93. In or about January 2020, Value City constructively discharged Hupp.

94. Value City terminated Hupp's employment based on her disability.

95. Value City terminated Hupp's employment based on her perceived disability.

96. Value City terminated Hupp's employment based on her association with her disabled son.

97. Value City violated ADA when it discharged Hupp based on her disability.

98. Value City violated ADA when it discharged Hupp based on her perceived disability.

99. Value City violated ADA when it discharged Hupp based on her association with her disabled son.

100. Value City violated ADA by discriminating against Hupp based on her disabling condition.

101. Value City violated ADA by discriminating against Hupp based on her perceived disabling condition.

102. As a direct and proximate result of Value City's conduct, Hupp suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## <u>COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*</u>

103. Hupp restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Hupp has a physical and/or mental impairment that significantly limits her in one or more major life activities.

105. Hupp has a record of physical and/or mental impairment.

106. Value City perceived Hupp as disabled.

107. Hupp's son is disabled.

108. Value City treated Hupp differently than other similarly-situated employees based on her disabling condition.

109. Value City treated Hupp differently than other similarly-situated employees based on her perceived disabling condition.

110. Value City treated Hupp differently than other similarly-situated employees based on her association with her disabled son.

111. In or about January 2020, Value City terminated Hupp's employment.

112. In or about January 2020, Value City constructively discharged Hupp.

113. Value City terminated Hupp's employment based on her disability.

114. Value City terminated Hupp's employment based on her perceived disability.

115. Value City terminated Hupp's employment based on her association with her disabled son.

116. Value City violated R.C. § 4112.02 when it discharged Hupp based on her disability.

117. Value City violated R.C. § 4112.02 when it discharged Hupp based on her perceived disability.

118. Value City violated R.C. § 4112.02 when it discharged Hupp based on her association with her disabled son.

119. Value City violated R.C. § 4112.02 by discriminating against Hupp based on her disabling condition.

120. Value City violated R.C. § 4112.02 by discriminating against Hupp based on her perceived disabling condition.

121. As a direct and proximate result of Value City's conduct, Hupp suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT III: RETALIATION IN VIOLATION OF FMLA

122. Hupp restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. During her employment, Hupp utilized FMLA leave.

124. After Hupp utilized her qualified FMLA leave, Value City retaliated against her.

125. Value City retaliated against Hupp by doing the Stopping of Sales Leads.

126. Value City retaliated against Hupp by terminating her employment.

127. Value City willfully retaliated against Hupp in violation of 29 U.S.C. § 2615(a).

128. As a direct and proximate result of Value City's wrongful conduct, Hupp is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Hupp respectfully requests that this Honorable Court grant the following relief:

(a) Issue an order requiring Value City retroactively to restore Hupp to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Value City of compensatory and monetary damages to compensate Hupp for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Value City in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Hupp's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com
*Attorneys for Plaintiff April Hupp*

## JURY DEMAND

Plaintiff Hupp demands a trial by jury by the maximum number of jurors permitted.

/s/ Paul Filippelli_____
Trisha Breedlove (0095852)
Paul Filippelli (0097085)